UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

VIRGINIA F.,

        Plaintiff,

                 5:20-CV-1000
 v.                (DJS)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| AMDURSKY, PELKY, FENNELL & WALLEN, P.C.<br>Attorneys for Plaintiff<br>26 East Oneida Street<br>Oswego, NY 13126 | AMY CHADWICK, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>Attorney for Defendant<br>J.F.K. Federal Building, Room 625<br>15 New Sudbury Street<br>Boston, MA 02203 | AMELIA STEWART, ESQ. |

**DANIEL J. STEWART**
**United States Magistrate Judge**

## DECISION and ORDER[1]

  Currently before the Court, in this Social Security action filed by Plaintiff Virginia F. against the Commissioner of Social Security, are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings. Dkt. Nos. 9 & 13.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order 18, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. No. 4 & General Order 18.

For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is granted and Defendant's Motion is denied. The Commissioner's decision denying Plaintiff disability benefits is reversed and the matter is remanded for further proceedings.

## I.  RELEVANT BACKGROUND

### A.  Factual Background

Plaintiff was born on September 20, 1960, making her 56 years old on the date she applied for disability, and 58 years old at the date of the ALJ's decision. Dkt. No. 8, Admin. Tr. ("Tr."), pp. 33, 197. Plaintiff reported completing high school and one year of college. Tr. at pp. 35, 201. Her past work included nearly thirty years as a school secretary. Tr. at pp. 36-38, 252. She reported that a neck injury made it increasingly difficult to fulfill her work duties, and she left this position soon after becoming eligible to retire at age 55. Tr. at pp. 37-41, 689. Plaintiff alleged disability due to a number of physical and mental impairments, including neck and back pain, chronic kidney disease, anxiety, and depression. Tr. at pp. 41-48, 200, 723-726.

### B.  Procedural History

Plaintiff applied for Disability Insurance Benefits on November 18, 2016, alleging an onset date of September 29, 2015. Tr. at pp. 177-178, 197. Her application was denied. Tr. at p. 61-73. Plaintiff requested a hearing, and a hearing was held on April 24, 2019 before Administrative Law Judge ("ALJ") David Romeo at which Plaintiff and a vocational expert ("VE") testified. Tr. at pp. 29-60. The ALJ issued a determination on May 3, 2019, finding Plaintiff was not disabled since the date of her application. Tr. at pp. 10-27. Plaintiff requested review of the ALJ's determination, and the Appeals

Council denied the request for review on July 14, 2020. Tr. at pp. 1-6. Plaintiff filed her Complaint in this action on August 28, 2020. Dkt. No. 1.

### C. The ALJ's Decision

In his decision, the ALJ made a number of findings of fact and conclusions of law. First, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2020. Tr. at p. 15. The ALJ next found that Plaintiff had not engaged in substantial gainful activity since September 29, 2015, the alleged onset date. *Id.* Next, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc and joint disease of the cervical and lumbar spine; status post cervical fusion with post laminectomy syndrome, cervical radiculopathy, and neuritis; diabetes mellitus; morbid obesity, and chronic kidney disease." Tr. at pp. 15-17. Fourth, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). Tr. at p. 17. Fifth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except

> she can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ropes, ladders, or scaffolds; can frequently reach, handle, finger and feel with both upper extremities; and can never be exposed to high exposed places or moving mechanical parts. The claimant's need to change positions from standing to sitting can be accommodated by the occasional standing and walking involved in sedentary work.

Tr. at p. 17-21. Next, the ALJ found that Plaintiff is capable of performing her past relevant work as a school secretary. Tr. at p. 21-22. Accordingly, the ALJ concluded

that Plaintiff has not been under a disability from September 29, 2015 through the date of his decision. Tr. at p. 22.

## II.  RELEVANT LEGAL STANDARD

### A.  Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B.  Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520 & 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

## III.  ANALYSIS

### A.  The ALJ's Weighing of Dr. Ram's Opinion

As part of his RFC determination, the ALJ reviewed several medical opinions addressing Plaintiff's physical impairments, and assigned discounted weight to each.  Tr. at pp. 20-21.  He assigned "little weight" to the July 17, 2017 and October 12, 2018 opinions of Plaintiff's primary care physician, Dr. Padma Ram.  Tr. at p. 20.  He assigned "some weight" to the December 20, 2016 opinion of Plaintiff's treating orthopedist, Dr. Thomas R. Haher and the January 16, 2017 opinion of consultative examiner Dr. Kalyani Ganesh.  Tr. at pp. 20-21.  With regard to mental impairments, the ALJ assigned "great weight" to the psychiatric opinion of consultative examiner Dr. Jeanne Shapiro, and "little weight" to the opinion of non-examining state agency psychiatric consultant Dr. E. Kamin.  Tr. at p. 21.

Plaintiff contends that the ALJ failed to properly weigh the opinions of Dr. Ram in accordance with the treating physician rule.  On July 17, 2017, Dr. Ram opined that

- 6 -

Plaintiff's cervical impairments, vertigo, anxiety, and depression limited her to occasional lifting and carrying of weights less than five pounds, and no lifting of any weight greater than five pounds. Tr. at p. 1208. In her opinion, Plaintiff was limited to use of her hands and fingers up to four hours during an eight-hour workday, and could never climb stairs, ladders, scaffolds, ropes, or ramps. Tr. at p. 1209. She opined that Plaintiff's pain and stress would frequently interfere with her attention and concentration, causing Plaintiff to be off task more than thirty percent of the workday. *Id.* In Dr. Ram's opinion, Plaintiff was likely to miss five or more workdays per month. Tr. at p. 1211.

Dr. Ram further opined that Plaintiff could only sit for about an hour over the course of a workday and would need to lie down or recline for about three hours each day. Tr. at p. 1210. While seated, Plaintiff would need to keep her legs elevated. *Id.* She also opined that Plaintiff was limited to standing or walking for less than one hour for an eight-hour workday. *Id.*

On October 12, 2018, Dr. Ram prepared an updated opinion that referenced Plaintiff's other impairments including chronic kidney disease, anemia, and enlarged spleen. Tr. at pp. 1507-1511. She opined Plaintiff could rarely lift or carry up to five pounds, and never lift or carry any greater weight. Tr. at p. 1508. She further opined Plaintiff could not walk a city block without rest, could not climb steps without use of a handrail, and had problems with balance, stooping, crouching, and bending. Tr. at p. 1508. In this opinion, Dr. Ram found Plaintiff was limited to reaching, handling, and fingering for less than three hours over the course of the workday, and was still unable to climb stairs, ladders, scaffolds, ropes, or ramps. Tr. at p. 1509. Dr. Ram also opined that

Plaintiff's pain and stress would constantly interfere with her ability to maintain attention and concentration due to pain and stress. *Id.* Dr. Ram maintained her opinion that Plaintiff would be off task more than thirty percent of the workday due to her impairments and was likely to miss five or more workdays each month. Tr. at pp. 1509, 1511.

Dr. Ram's more recent opinion was slightly less restrictive in finding that Plaintiff can sit for a total of about three hours during the workday, but still needed to lie down or recline for about three hours per day. Tr. at p. 1510. While seated, Plaintiff would need to keep her legs elevated. *Id.* Dr. Ram also opined that Plaintiff could stand or walk for less than one hour over the course of the workday. *Id*.

The Second Circuit has long recognized the "treating physician rule" set forth in 20 C.F.R. §§ 416.927(c) & 404.1527(c).[2] "[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) & 20 C.FR. § 404.1527(c)(2)) (internal quotation marks omitted). However, "the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts."

---

[2] For claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). But since Plaintiff filed her claim in on November 18, 2016, the treating physician rule applies. *See Claudio v. Berryhill,* 2018 WL 3455409 at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule under the earlier regulations.").

*Halloran v. Barnhart*, 362 F.3.d 28, 32 (2d Cir. 2004). In deciding how much weight to afford the opinion of a treating physician, the ALJ must "'explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist.'" *Greek v. Colvin*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).

In *Estrella v. Berryhill*, the Second Circuit more recently addressed an ALJ's failure to "explicitly" apply the regulatory factors set out in *Burgess* when assigning weight to a treating physician's opinion. 925 F.3d 90 (2d Cir. 2019). In *Estrella*, the Court explained that such a failure is a procedural error and remand is appropriate "[i]f 'the Commissioner has not [otherwise] provided 'good reasons' [for its weight assignment][.]'" 925 F.3d at 96 (alteration in original) (quoting *Halloran v. Barnhart*, 362 F.3d at 32). The Court further clarified that "[i]f, however, 'a searching review of the record' assures us 'that the substance of the treating physician rule was not traversed,' we will affirm." *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d at 32). The Court also noted the question of "whether 'a searching review of the record . . . assure[s us] . . . that the substance of the . . . rule was not traversed'" is "whether the record otherwise provides 'good reasons' for assigning 'little weight' to [the treating psychiatrist's] opinion." *Id.*

The Second Circuit recently reiterated its *Estrella* findings in *Ferraro v. Saul*, finding that the ALJ did not explicitly consider the frequency, length, nature, and extent of treatment that the claimant had with his treating physicians, did not otherwise provide "good reasons" for assigning reduced weight to the opinions of those physicians, and a

- 9 -

searching review of the record did not assure the Court that the substance of the treating physician rule was not traversed.  806 Fed. Appx. 13, 15-16 (2d Cir. 2020).

Had the ALJ in this case assigned controlling weight to either of Dr. Ram's opinions, he may have found Plaintiff to be disabled.  "Sedentary work" is defined as work that

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  S.S.R. 96-9p explains that sedentary work generally involves sitting for a total of about six hours of an eight-hour workday.  1996 WL 374185, at *3 (S.S.A. July 2, 1996).  At the April 24, 2019 hearing, the VE testified that there would be no full-time jobs available for an individual limited to lifting and carrying no more than five pounds, standing and walking less than an hour, and sitting for no more than three hours.  Tr. at p. 58.

In assigning "little weight" to both of Dr. Ram's opinions, the ALJ noted that:

> Dr. Ram is an acceptable medical source who has treated the claimant for a number of years (20 CFR 404.1502).  However, she has provided no specific clinical findings to support her conclusions.  In addition, her finding that the claimant can perform far less than the full range of sedentary work is inconsistent with Dr. Ram's treatment records and the other medical evidence of record.  For example, Dr. Ram's conclusion that the claimant cannot lift more than five pounds, can stand, walk, and sit at less than sedentary levels, is limited in engaging in manipulation tasks, and would be off task for more than 30% of each workday is inconsistent with the claimant's moderate, at most, degenerative changes to her spine.  It is also inconsistent with the claimant's lack of distress and/or deficits in standing, walking, sitting, manipulation, attention and/or concentration

> during most examinations, including Dr. Ram's examinations. The undersigned notes that Dr. Ram's opinions are also inconsistent with the claimant's reported abilities, including the claimant's ability to perform activities of daily living independently and travel extensively since her alleged onset date. The finding that the claimant would be absent from work and/or unable to perform a full eight hour workday for five or more days each month is speculative.

Tr. at p. 20. The ALJ considered that Dr. Ram is a treating physician, and briefly assessed the consistency of the opinion with treatment notes and Plaintiff's activities of daily living. However, as in *Ferraro*, the ALJ only acknowledged that Dr. Ram had a treating relationship with Plaintiff "for a number of years." The Second Circuit explained there that "merely acknowledging the existence of treatment relationships is not the same as explicitly considering 'the frequency, length, nature, and extent of treatment.'" *Ferraro v. Saul*, 806 Fed. Appx. at 15. In *Ferraro*, the Court noted this was "particularly true where, as here, the relationships involved dozens of appointments over nearly two years, and the doctors worked continuously with the patient to develop and monitor the success of various treatment plans." *Id.* This same concern is present here: Dr. Ram has been Plaintiff's primary care physician since 2000, and estimated that she saw Plaintiff for regular appointments at least every three months. Tr. at p. 1507. The administrative record documents Dr. Rahm's involvement in Plaintiff's treatment for a number of impairments relevant to the ALJ's disability determination, including her neck and lower back pain, diabetes, kidney disease, enlarged spleen, anemia, and anxiety. Tr. at pp. 723-775, 958-960, 1500-1505.

The Court does not find that the ALJ's brief discussion of Plaintiff's travel and activities of daily living constitutes sufficiently "good reasons" for assigning reduced

weight to Dr. Ram's treating physician opinion, and a searching review of the record does not assure the Court that the substance of the treating physician rule was not traversed.[3] At least some of this travel was necessary to obtain medical care, and Plaintiff fell and injured herself during one trip. Tr. at pp. 50-51, 1474. The ALJ also failed to adequately explain how Plaintiff's activities undermined or contradicted Dr. Ram's opinion regarding Plaintiff's ability to sit, stand, reach, and perform other sustained work activities in an ordinary work setting on a regular and continuing basis. *See* Tr. at p. 20. In addition, the ALJ failed to explain the medical evidence that rendered Dr. Ram's opinion regarding time off task and absenteeism to be "speculative," particularly where no other medical opinion addressed those issues. *See Robinson v. Comm'r of Soc. Sec.*, 2022 WL 761132, at *1-2 (2d Cir. Mar. 14, 2022) (remanding where ALJ appeared to substitute own opinion for treating physician's conclusion that claimant's back pain would force him to miss work up to three days each month).

As such, this matter must be remanded for a further analysis of Dr. Ram's opinions and the remainder of the medical opinion evidence.

### B.  Plaintiff's Remaining Contentions

Because the Court is remanding for proper consideration of the medical opinion evidence, the Court will not consider Plaintiff's additional arguments regarding the ALJ's

---

[3] Indeed, Dr. Ram's opinion appears consistent with portions of the opinion of Dr. Haher, who found Plaintiff was limited to occasional sitting, standing, and walking, and occasional bending, grasping, fine manipulation, and reaching in all directions. Tr. at p. 1016. The Court notes that Dr. Haher's opinion suffers from an internal inconsistency, because the orthopedist ultimately concludes that Plaintiff could perform sedentary work involving "sitting most of the time." *Id.* The ALJ assigned "some weight" to Dr. Haher's opinion, but specifically discounted his most restrictive findings related to sitting, grasping, fine manipulation, and reaching. Tr. at p. 20.

step two determination and RFC analysis, because those decisions will likely need to be revisited on remand. *See, e.g., Samantha D. v. Comm'r of Soc. Sec.*, 2020 WL 1163890, at *10 (N.D.N.Y. Mar. 11, 2020) (declining to reach arguments concerning whether ALJ's findings were supported by substantial evidence where the court had already determined that remand was necessary).

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 9) is **GRANTED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **REVERSED** and **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Decision and Order upon the parties to this action.

Dated: March 28, 2022
Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge